UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                    )                                    |
|------------------------------------|----|---------------------------------|
| GARY SOROKO, et al.,               )   |                                 |
|                                    )   |                                 |
| Plaintiffs,                        )   |                                 |
|                                    )   |                                 |
| v.                                 )   | Civil Action No. 10-11788-GAO   |
|                                    )   |                                 |
| THE CADLE CO., et al.,             )   |                                 |
|                                    )   |                                 |
| Defendants.                        )   |                                 |
|                                    )   |                                 |

REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 17, 2011

SOROKIN, M.J.

The Parties' cross-motions for summary judgment arise out of a settlement which both sides claim the other has breached, and which neither side seeks to enforce at the moment. For the following reasons, I RECOMMEND that the Court DENY the Plaintiffs' motion for summary judgment (Docket # 17) and allow the Defendants' cross motion as to the breach of contract claim (Docket # 51).

I.  FACTUAL BACKGROUND AND PROCEDURAL BACKGROUND

The Parties to the above-entitled action were previously parties to a case litigated in Massachusetts' Suffolk County Superior Court, entitled Chase et al. v. Cadle, et al., Civil Action No. 04-0375-BLS1. A settlement was negotiated which purported to resolve not only that pending Suffolk Superior Court case, but also the claims of an additional ten plaintiffs whose

1

claims underlie the above-entitled action and two additional federal cases – namely, Shanley et al. v. Cadle et al. (Civil Action No. 07-12247-GAO) and Martel et al. v. Cadle et al. (Civil Action No. 08-10388-GAO).

At the conclusion of a mediation held on December 10, 2008, Defendant Cadle made four separate settlement offers, any one of which he was prepared to accept and which he agreed to keep open until December 11th. Docket # 19-2 at 9-10. On December 10th, Orestes Brown (co-counsel for the Plaintiffs) sent an email to Mark Bluver (co-counsel for the Defendants) stating that his clients would "accept Mr. Cadle's offer of settlement . . . as follows" and incorporating by reference the following terms: (1) that the fourteen claimants "shall release any individual claims they have or may have against Daniel Cadle and the entities he owns or controls (Cadle) and dismiss with prejudice any such claims in any matter they are [sic] presently pending, waiving any rights of appeal"; (2) that "Cadle shall assign any right, title or interest in any notes, mortgages, agreements, claims, encumbrances, security interests, causes of action or liens it has or may have against claimants to the trustee of a court-approved trust established for the claimants"; and (3) that "Cadle shall pay $200,000 to such trust." Docket # 19-2 at 25. This agreement corresponded (with the exception of a slight modification concerning waiver of the right of appeal) with the fourth offer that had been made by Defendant Cadle at the conclusion of the mediation. Docket # 19-2 at 25.

On December 11, 2008, Bluver emailed Brown seeking to add two additional terms desired by Cadle: (1) that Brown and attorney Jan Schlictmann (who also represented the Plaintiffs) would not violate state law or the ethics code and would not directly or indirectly solicit any clients to sue Cadle, his companies or individuals associated with his companies; and

(2) that neither Cadle nor Brown would in any way oppose the efforts of the Cadle Company (or of any affiliated entity) to obtain a collection agency license in Massachusetts (including by withdrawing any documents previously submitted). See Docket #19-2 at 15-16 (findings of Judge Gants).[1] The Plaintiffs rejected these proposals. Id.

At some point prior to December 19, 2008,[2] the Plaintiffs filed a motion to compel enforcement of the settlement agreement. See Docket # 19-3. The Defendants opposed, contending that the parties had not reached agreement on all of the material terms; at no point in their opposition did the Defendants state that they would not honor any agreement found by the Court to exist. Docket #19-3 at 6. After a hearing, Judge Gants determined, on December 22, 2008, that the two additional terms sought by Bluver "went well beyond the scope of the earlier offer, which had already been accepted." Docket # 19-2 at 16. Judge Gants characterized Bluver's request as "an attempt to renegotiate a contract that had already been agreed to," which attempt was rejected. Id. He noted that the law permits a party to attempt to renegotiate, but that such an effort "to improve upon the deal he had entered into after the acceptance" has no effect on the earlier contract. Id. Finally, Judge Gants found that the December 10, 2008, email exchange accurately reflected the meeting of the minds among the parties to the agreement and that it contained all of the material and essential terms necessary to constitute a binding agreement. Id. at 17-21; Docket # 19-1. Judge Gants next determined that the settlement of the named plaintiffs' claims was fair and reasonable and that there was no evidence that the named

---

[1] Citations throughout are to the pagination of the Court's CM/ECF docketing system, rather than to the internal pagination of exhibits themselves.

[2] The record reflects the date of the Defendants' opposition, but not that of the Plaintiffs' motion.

3

plaintiffs benefitted from the agreement at the expense of the putative class. Docket # 19-1 at 2. He further directed that "a judgment of dismissal shall enter in this case after the close of business on January 9, 2009 unless a motion to amend to add a named plaintiff has been filed."[3] Id. at 3.

On December 29, 2008, the Plaintiffs sent to Cadle a demand letter pursuant to M.G.L. c. 93A in which they demanded in relevant part that Cadle (1) take steps to effect the terms of the settlement agreement by December 31, 2008, including payment to the designated trustee of $200,000; and (2) payment to the trustee of an additional $25,000, for fees and expenses incurred by the Plaintiffs and their counsel because of Cadle's refusal to effect the settlement. Docket # 19-4. On December 31, 2008, the Defendants rejected the demand. Docket # 19-5.

Contrary to the Plaintiffs' characterization of the Defendants' response (See Docket #19 at ¶ 8), the Defendants neither expressly repudiated the settlement agreement nor stated an intention not to comply. Rather, they rejected the Plaintiffs' claims for additional damages and asserted that the time for compliance had not yet arrived because: (a) Judge Gants' December 22, 2008, Order was not a final order because it provided by its own terms that a judgment of dismissal would enter on January 9, 2009; (b) the statutory time period to appeal the Order had not yet run (and the Defendants had not then decided whether or not to appeal); and (3) no fairness hearings had occurred in federal court regarding those settling plaintiffs with pending federal claims. Docket #19-5 at 2-3.

On January 2, 2010, the Plaintiffs in the Chase case pending before Judge Gants (that is,

---

[3] The Settlement Agreement resolved the claims of all of the named plaintiffs before Judge Gants as well as the claims of ten others.

Chase, Soroko, Monteiro and Gaziano) filed a motion seeking: (1) to add a 93A claim arising out of the Defendants' "willful refusal upon demand to effect Settlement in breach of the Settlement Agreement"; and (2) to add Gail Charest, Brian Garry and Thomas Murray as additional named plaintiffs in the action. Docket # 19-6

On January 20, 2009, the Plaintiffs' Motion to Amend was denied by Judge Gants. Docket # 49-4. In his ruling, Judge Gants' found that, "the defendants are entitled to appeal this Court's Order declaring the settlement binding, and are not yet in violation of that Settlement Agreement. If any such violation occurs, the plaintiffs can bring a separate contract action to enforce it." Docket 49-4 at 2. Regarding the Plaintiffs' allegation that Cadle had threatened a separate legal action against the Plaintiffs' counsel if they sought leave to amend, Judge Gants ruled that "[the Cadle Company] has yet to bring the threatened action against plaintiffs' counsel and, if it does, plaintiffs' counsel can seek to bring its allegations as part of their counterclaim to that action." Id. As for the proposed new plaintiffs, Judge Gants ruled that two brought "futile" claims and that the interests of justice were not served by allowing amendment to include proposed Plaintiff Charest's claims, given the modest damages, and that they would otherwise be barred by the statute of limitations. Id. at 2-3. Accordingly, Judge Gants directed entry of judgment of dismissal and the case was then dismissed. Id. at 3.

On January 26, 2009, both the existing Chase plaintiffs and the plaintiffs proposed by the Motion to Amend appealed, inter alia, Judge Gants' order denying the motion to amend. Docket # 49-6; On that same day, the Plaintiffs also moved to modify Judge Gants' original findings and sought an Order ordering the Defendants to provide the relief under the Settlement Agreement. Id. Judge Gants denied this motion as well. Docket #49-7. He ruled that "[t]he time is not ripe

to order the defendants to provide the relief agreed to in the Settlement Agreement until (1) it is plain that the defendants have not appealed" the order finding that there was a binding settlement agreement and that "(2) it is plain that the plaintiffs in this action . . . have withdrawn their notice of appeal." Docket 49-7 at 1. Thus, Judge Gants ordered the Defendants to fund the settlement, but only if the Defendants had allowed the time for an appeal to expire without filing a notice of appeal and only if the Plaintiffs had amended their notice of appeal to make clear that only the non-parties were appealing the denial of the motion to amend. Id. at 1-2.

The Plaintiffs next sought relief from a Single Justice of the Appeals Court in the form of an order directing the Defendants to fund the settlement immediately. The single justice refused to order a funding of the settlement, rejected the request to modify Judge Gants' December 22, 2008, Order and "ANNULLED" that portion of the January 29, 2009, Order establishing the preconditions for funding noted, supra. Docket 49-8. On February 24, 2009, the Plaintiffs filed in the Superior Court a Motion to Show cause why the Defendants should not be required to comply with the Settlement Agreement. Docket # 49-9. The Superior Court (Hinkle, J.) denied this request. Id. On May 12, 2009, this Court denied a similar motion. Civil Action No. 07-12247-GAO, Docket # 73.

Thereafter, the Plaintiffs pursued the appeal described in their original Notice of Appeal. The Defendants filed a cross appeal. Chase v. Cadle Co., 78 Mass.App.Ct. 1102, *1 (2010). On October 8, 2010, the Appeals Court affirmed Judge Gants' ruling that the Parties' email exchange constituted a binding settlement agreement. Id. at *2. Regarding the Defendants' argument that the Plaintiffs had breached – either by appealing a summary judgment decision which predated the settlement or by filing (and appealing) the motion to amend or both – the

6

Appeals Court ruled that "[w]e need not reach these arguments because the agreement's enforcement is not yet an issue: the defendants had the right to appeal the judge's ruling that the agreement was binding, and, contrary to the plaintiffs' argument on appeal, there was no abuse of discretion in not immediately allowing enforcement of the agreement. If hereafter the defendants should refuse to comply with the settlement agreement, the plaintiffs may bring an enforcement action and the defendants then may properly raise their arguments regarding material breach." Id. The Appeals Court also affirmed the denial of the motion to amend. Id. at *3.

The Plaintiffs in the above-entitled action were (with the sole exception of Gail Charest) parties to the Settlement Agreement. Docket # 19 at ¶ 1 n. 1. At this time, none of these Plaintiffs seeks enforcement of the Settlement Agreement. Rather, they claim breach of contract and violation of M.G.L. c. 93A arising from the Defendants' alleged breach of the Settlement Agreement. Pending before the Court are the Parties' Cross-Motions for Summary Judgment on the breach of contract claim. Plaintiff Charest was not a party to the settlement and has not joined the others' claims. Her claims are therefore treated in a separate Report and Recommendation of this date.

II.   DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v.

Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993).  Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation."  Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

The Plaintiffs in this action (excepting Plaintiff Charest who is not a party to Count I) seek summary judgment on Count I of their Complaint which alleges breach of the settlement contract and breach of the duty of good faith and fair dealing.[4]  Docket #17.  The Plaintiffs assert that the Defendants' "continuous disavowal of [the] Settlement Agreement, beginning with Defendants['] wrongful attempt to insert additional terms on 12-10-08, constituted a complete repudiation and breach of the Settlement Agreement" for which the Plaintiffs now seek damages.  Docket # 17 at 2-3.

"A material breach of contract by one party excuses the other party from performance as matter of law," and whether a material breach has occurred is a question of fact.  Coviello v. Richardson, 76 Mass.App.Ct. 603, 609 (2010) (quoting Hastings Assocs., Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass.App.Ct. 162, 171 (1997)). A repudiation of a contract is a material breach, and "[i]n order to operate as a discharge of the other party, the repudiation must be either with respect to the entire performance that was promised or with respect to so material a part of it as

---

[4] Within the text of their motion, the Plaintiffs state that plaintiffs from other cases (namely James Martel, Sheila Martel, Seremy Francois, Charles Watson, Kathleen Shanley, Harvey Cohen, Judith Ruprecht, Anthony Colon, Raymond Fabregas and Ronald Baker) seek leave to join in this motion (and to the extent necessary to do so, seek to join in this action).

8

to go to the essence. It must involve a total and not merely a partial breach." Id. (quoting Bucciero v. Drinkwater, 13 Mass.App.Ct. 551, 555 (1982) (quoting 4 Corbin, Contracts § 975, at 918 (1951))).

A contract can be anticipatorily repudiated before the time for performance is reached. See Restatement (Second) of Contracts 250 (1979) (anticipatory repudiation of a contract is "a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives."). A contracting party's insistence, "wilfully or by mistake," on preconditions to performance not stated in the contract, constitutes a breach by anticipatory repudiation. See 4 Arthur L. Corbin, Corbin on Contracts § 973 (1951). Massachusetts law provides in relevant part that:

> When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may
>
> (a) for a commercially reasonable time await performance by the repudiating party; or
>
> (b) resort to any remedy for breach (section 2-703 or section 2-711), even though he has notified the repudiating party that he would await the latter's performance and has urged retraction; and
>
> (c) in either case suspend his own performance . . .
>
> M.G.L. c. 106 § 2-610

The Plaintiffs primarily argue that Judge Gants' findings of December 22, 2008, affirmed on appeal, establish that there was a binding contract and establish that the Defendants repudiated.[5] See Docket #18 at 5-6. The Plaintiffs cite no evidence of statements or conduct

---

[5] The Plaintiffs assert that the Defendants, right after forming the contract, "notified [Plaintiffs] they would not comply with the 'Settlement' terms unless [Plaintiffs] and their

9

from or by the Defendants to the effect that they intended not to perform when and if the time for performance arrived. Rather, the Defendants indicated in their letter of December 31, 2008, that the time for compliance had not yet arrived because (a) Judge Gants' December 22, 2008, Order was not a final order because it provided by its own terms that a judgment of dismissal would enter on January 9, 2009; (b) the statutory time period to appeal the Order had not yet run (and the Defendants had not then decided whether or not to appeal); and (3) no fairness hearings had occurred in federal court regarding those settling plaintiffs with pending federal claims. Docket #19-5 at 2-3.

Moreover, Judge Gants determined that the Defendants had not breached: (a) by trying to renegotiate to add additional terms; (b) by questioning (in either the Superior Court or the Appeals Court) whether the parties had formed a binding settlement contract; or (c) by declining, prior to the Appeals Court's decision, to fund the settlement. Neither the Single Justice of the Appeals Court, Judge Hinkle, nor a panel of the Massachusetts Appeals Court disturbed those findings.

Accordingly, taking the evidence in the light most favorable to the Defendants, as the law requires upon consideration of the Plaintiffs' Motion for Summary Judgment (Docket # 17), the

---

counsel agreed to certain additional improper un-bargained for terms." Docket #19 at 3. In addition, they contend that the Defendants "persisted" in these demands. Id. The Plaintiffs rely only upon Judge Gants' decision to establish these propositions. Neither the page citation they provide nor the totality of Judge Gants' decision supports these assertions. Rather than finding that the Defendants refused to comply with the Settlement Agreement absent agreement to the additional terms (as the Plaintiffs assert), Judge Gants found that "[t]his was essentially an attempt to renegotiate a contract" that had already been agreed to and that "the law permits a party to attempt to renegotiate a contract, but it does not obligate the other side to accept it." Docket # 19-2 at 16-17. Nowhere does Judge Gants find that the Defendants stated that they would not comply.

Motion fails and I recommend that the Court DENY it.

Regarding the Defendants' Cross-Motion for Summary Judgment, taking the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in their favor, as the law requires, I RECOMMEND that the Court ALLOW the Motion For Summary Judgment on Count I (Docket # 51). First, there is no evidence of repudiation or breach. The Plaintiffs contend that the failure to implement the settlement agreement constitutes repudiation or breach. It does not. Plainly, the time for such implementation did not occur. Plaintiffs' counsel's email agreeing to one of Bluver's offers made clear that Plaintiffs were agreeing to stipulate to dismiss all of their then pending claims and to waive any appeals. Under the clear and unambiguous terms of the agreement, the funding of the settlement would not precede the dismissals.[6] For the reasons already stated by the state courts, I agree that by questioning whether the parties formed a binding settlement agreement, the Defendants neither breached the agreement formed by the parties nor manifested an intention not to comply.

Indeed, the state courts repeatedly found that the Defendants could appeal and that the time had not yet arrived for them to fund the settlement. No fairness finding has ever been made with regard to the Plaintiffs' claims pending in federal court and that is a legal prerequisite to the implementation of the settlement as to the federal plaintiffs. Because the settlement is unitary – the $200,000 was an undivided payment for the benefit of all of the plaintiffs – Defendant's obligation to fund the settlement was not ripe until this Court also approved the settlement or at least the Plaintiffs dismissed their claims in this putative class action. Regarding the attempt to

---

[6] Presumably, as ordinarily occurs, the parties would have exchanged the check for the stipulations of dismissals.

renegotiate, the law did not prevent the attempt and there is no evidence cited by Plaintiffs that the Defendants intended not to comply upon the determination that an agreement was reached despite the lack of agreement regarding Defendants' proposed additional terms.

Second, the plaintiffs are barred from relitigating the issues determined by the state court or the claims that could have been brought in the proceeding in state court regarding the settlement. Specifically, among the issues included within the bar are (1) plaintiffs' argument that defendants' breached or repudiated the settlement agreement prior to the dismissal of the state court lawsuit entered by Judge Gants pursuant to the settlement; and (2) plaintiffs contention that defendants' had a duty to fund the settlement prior to the resolution of the appeal from the Superior Court.

The term "res judicata" includes both claim preclusion and issue preclusion. See Heacock v. Heacock, 402 Mass. 21, 23 n. 2 (1988). "Claim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Kobrin v. Board of Registration in Medicine, 444 Mass. 837, 843 (2005) (quoting O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259 (1998) (quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 179 n. 3 (1998))); See also Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir.2008) (Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered). The invocation of claim preclusion requires three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin, 444 Mass at 843 (quoting DaLuz v. Department of Correction, 434

12

Mass. 40, 45 (2001) (quoting Franklin v. North Weymouth Coop. Bank, 283 Mass. 275, 280 (1933))).

Issue preclusion prevents relitigation of an issue determined in an earlier action where the same issue arises in a later action, based on a different claim, between the same parties or their privies. Kobrin v. Board of Registration in Med., 444 Mass. 837, 843 (2005). Before precluding a party from relitigating an issue, "a court must determine that (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." Id. (quoting Tuper v. North Adams Ambulance Serv., Inc., 428 Mass. 132, 134 (1998)). The issue must have been essential to the earlier judgment. Kobrin, 444 Mass at 844.

All of the requirements for both issue and claim preclusion are met in this case. The dismissal by Judge Gants constitutes a final judgment on the merits of the issues in dispute in this matter which dismissal necessarily determined these issues in matters with an identity of the causes of action. The parties are different. The settling federal plaintiffs were not formal parties in the state court litigation. Nonetheless, they are bound. Massachusetts law supplies the rule of decision because it arises from a judgment of the courts of the Commonwealth. Under Massachusetts law non-parties are bound by prior judgments "only where [the nonparty's] interest was represented by a party to the prior litigation." Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 249-50 (1980). In order for a claim to be precluded "[t]here has to be a 'sufficient legal identity' between the interest of the person allegedly represented and the prior litigant." Id. (quoting Rudow v. Fogel, 376 Mass. 587, 588 (1978)). Ordinarily, this requires "a

13

very close relationship bordering on a complete identity of interest between the individuals in question." Mongeau, 10 Mass.App.Ct. at 252 (quoting Vestal, 'Claim Preclusion and Parites in Privity: Sea-Land Servs. v. Gaudet in Perspective,' 60 Iowa L.Rev. 973, 976 (1975)).

The federal and state plaintiffs that joined together in the settlement agreement were in privity with each other concerning the settlement agreement related litigation in state court. All of these plaintiffs were parties to the settlement agreement. The same counsel represented all of these plaintiffs, indeed, one lawyer's email sufficed to bind all to the settlement offer. On the issues in question the state and federal plaintiffs shared identical interests. Moreover the state court plaintiffs' papers spoke on behalf of the settling federal plaintiffs. Thus, the state court plaintiffs' motion to amend filed on January 2, 2009 states that the state court "upon evidentiary hearing found that Claimants, 14 Massachusetts consumers four of whom are Plaintiffs in this action, entered into a lawful enforceable Settlement Agreement . . ." Docket # 16-5.[7] In short, counsel characterized the proceeding before Judge Gants as concerning all of the parties to the settlement agreement. Accordingly, res judicata applies.

---

[7] The footnote omitted from this quotation defined the "Claimants" as the federal and state plaintiffs and listed all of them by name as well as one other settling individual.

III. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY Plaintiffs' Motion for Summary Judgment (Docket #17) and ALLOW Defendants' Cross-Motion for Summary Judgment (Docket #51).[8]

        /s / Leo T. Sorokin
    UNITED STATES MAGISTRATE JUDGE

---

[8] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).