UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATHLEEN SHANLEY, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 07-12247-GAO |
| DANIEL CADLE, et al., | )<br>)<br>) |
| Defendants. | )<br>) |
| SHEILA MARTEL, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 08-10388-GAO |
| DANIEL CADLE, et al., | )<br>)<br>) |
| Defendants. | )<br>) |

(Continued on next page)

|   |   |
|---|---|
| GARY SOROKO, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 10-11788-GAO |
| | ) |
| THE CADLE CO., et al., | ) |
| | ) |
| Defendants. | ) |

ORDER ON DEFENDANTS' MOTIONS TO DISMISS
AND PLAINTIFFS' MOTIONS FOR FAIRNESS HEARING
AND TO ENFORCE SETTLEMENT

March 9, 2012

SOROKIN, M.J.

The above-entitled actions have followed a long and tortured path, although it has been neither as long nor as acrimonious as the years of litigation between the Plaintiffs' counsel, Jan Schlichtmann, and the principal Defendant, Daniel Cadle. Unfortunately, the recent battles imply an inability to do anything other than litigate, even when Schlichtmann and Cadle reach an agreement to settle.

For the reasons explained below, I RECOMMEND that the Court issue a sixty (60) day settlement Order of Dismissal, enforce the Settlement Agreement and order that within thirty (30) days of the Court's Order, the Plaintiffs shall provide Stipulations of Dismissal, with prejudice, in exchange for Defendants providing the funds and documents described in the Settlement Agreement.

The Court's ruling on September 23, 2011 (Docket # 168 in 07-cv-12247; Docket # 106

in 08-cv-10388; Docket # 81 in 10-cv-11788 ) adopting the Report and Recommendations dated June 17, 2011 (Docket # 162 in 07-cv-12247; Docket # 102 in 08-cv-10388; Docket # 74 in 10-cv-11788) forms the background for this present Report and Recommendation. The following certain additional undisputed facts are relevant.

1. Schlichtmann and Cadle reached an agreement settling the individual claims of fourteen state and federal plaintiffs in December, 2008 in exchange for a payment of $200,000 and delivery to the Plaintiffs of certain financial documents. See 10-cv-11788, Docket # 19-2.

2. Neither Cadle, nor his lawyers on his behalf, have ever expressly repudiated the settlement. See 10-cv-11788, Docket # 74 at 4.[1]

3. Cadle has accepted a substantial benefit under the settlement – the dismissal with prejudice of the individual claims brought by the settling state court plaintiffs (effectuated in January 2009);

4. Cadle has never funded the settlement or delivered the documents;

5. Cadle never requested that this Court hold the fairness hearing that was (until recently) a prerequisite to the implementation of the settlement with respect to the federal plaintiffs (a precondition recognized by his lawyers as early as December 2008);

6. Cadle is now asking this Court to enforce that portion of the settlement agreement requiring that the federal settling plaintiffs dismiss their individual claims with prejudice while simultaneously asking this Court to excuse completely his obligation to make the payment to which he agreed as part of the settlement agreement;

7. Schlichtmann, for his part, obtained (with his co-counsel) a settlement which included a provision that the settling plaintiffs waived all appeals. Schlichtmann nevertheless filed a Notice of Appeal with respect to various rulings issued by Judge Gants before Cadle had announced whether he would comply with Judge Gants' ruling (that the Parties had reached a settlement agreement) or would seek further review of that decision;

---

[1] Cadle's counsel did repudiate the settlement, however they did so in a context in which the Court had indicated that their position was not to be binding upon the Parties. See 08-cv-10388, Docket # 85 at 11; infra at 9.

8. On at least four occasions in 2009 (in front of four different judges, in both state and federal courts), Schlichtmann sought an order requiring Cadle to fund the settlement, yet Schlichtmann did not request the required fairness hearing in federal court during that time period or during the nine months following the Appeals Court's final determination upholding the settlement agreement;

9. Schlichtmann failed to request enforcement of the Settlement Agreement in any court during the nine months following his victory in upholding Judge Gants' ruling that the parties' had reached a settlement agreement; and,

10. Schlichtmann has repeatedly asserted that Cadle breached the Settlement Agreement by contending before Judge Gants and the Massachusetts Appeals Court that the Parties had failed to reach an agreement, although Judge Gants and the Appeals Court each determined that Cadle had that right.

Now, approximately seventeen months after the Appeals Court ruled (at which time both Schlichtmann and Cadle's counsel informed the Court that neither side was requesting enforcement of the settlement agreement) and after the Court has resolved disputed motions, both sides are requesting enforcement although, characteristically, they do so in different ways.

In light of the foregoing, I turn to the disputed motions.

The Plaintiffs have moved that the Court conduct a fairness hearing in order to facilitate the implementation of the settlement. These motions are now moot. Such a hearing was a necessary precondition to a settlement such as this one in which all named plaintiffs in a putative class action propose to settle only their individual claims. However, the Court has determined that the claims in Shanley and Martel fail to qualify for class certification under Rule 23. Accordingly, at this time, there is no need for a fairness hearing. Thus, I recommend that the Court DENY AS MOOT the motions for fairness hearings (Docket # 165 in 07-cv-12247; Docket # 104 in 08-cv-10388; Docket # 77 in 10-cv-11788).

Enforcement of the Settlement Agreement

The Defendants request that the Court enforce the Settlement Agreement only insofar as it provides for the dismissal with prejudice of the settling federal Plaintiffs' individual claims (i.e., all of the remaining claims in Shanley and Martel). The Plaintiffs do not oppose such dismissals as part of the enforcement of the Settlement Agreement. The Parties part company over whether the Court may require Cadle to perform the obligations he undertook as part of the Settlement Agreement.

Both as a matter of undisputed fact and as a matter of law, the Parties entered into a binding lawful settlement agreement. The settling state Plaintiffs have performed by dismissing their actions. The settling federal Plaintiffs are now requesting enforcement of the Settlement Agreement and are offering to perform (i.e., to dismiss the Shanley and Martel actions). Cadle has accepted the settling state Plaintiffs' performance and is requesting the Court to order the federal Plaintiffs' performance – however, he objects to performing his end of the bargain he has made for the following reasons.

First, Cadle argues that the Court, in allowing the Defendants' Motion for Partial Summary Judgment in Soroko with respect to the settling Plaintiffs' breach of contract claim, determined that Plaintiffs materially breached the settlement agreement, thus obviating the need for the Defendants to perform. The Defendants misread the Court's decision. While the Defendants argued that Plaintiffs had materially breached the settlement agreement and requested that the Court allow its motion for summary judgment on the breach of contract claim for this reason, neither that argument nor that request formed the basis for the Court's ruling. The

4

Report and Recommendation in question included a recommendation that the Court allow the Defendants' cross-motion as to the Plaintiff's breach of contract claim because (1) there was "no evidence of repudiation or breach" by the Defendants (see 10-cv-11788, Docket # 74 at 11) and (2) principles of res judicata barred the Plaintiffs from relitigating the issues determined by the state court (see, id. at 12). Judge O'Toole adopted the R&R "for substantially the reasons set forth" therein. In addition, he explained specifically that "the plaintiffs have not proffered evidence sufficient to present a genuine issue of material fact regarding their claims of breach of contract." 10-cv-11788, Docket # 81. At no point did the Court discuss the breaches the Defendants alleged that the Plaintiffs had committed, nor did it render rulings regarding those allegations. The Defendants' first argument is, therefore, without merit.[2]

Second, the Defendants argue that the Plaintiffs materially breached the Settlement Agreement by appealing from the dismissal by Judge Gants. In relevant part, the Parties' Settlement Agreement provided for the release and dismissal with prejudice of all of the individual claims of the settling Plaintiffs, a waiver of all appeals, payment by the Defendants of $200,000 to a court-approved trust established for the Plaintiffs, and the assignment of Cadle's interest in the debts of the Plaintiffs to the trustee. Specifically, the Defendants point to the state Plaintiffs' January 26, 2009, Notice of Appeal seeking review of: Judge Gants' January 20,

---

[2] Insofar as the Defendants argue that they are not asking for enforcement of the Settlement Agreement, but are only asking that the Court adopt, under principles of res judicata, Judge Gants' state court order dismissing the settling Plaintiffs' claims, that is a distinction without meaning. Judge Gants dismissed the state case only because he had determined that the Parties had reached a Settlement Agreement and because he understood Cadle to be taking the position that he would either comply with the Settlement Agreement or would seek judicial review of the decision that the Parties reached an agreement. The equitable doctrine of res judicata does not permit Cadle, without a legal basis, to obtain the benefit of the bargain without paying the consideration to which he agreed.

5

2009, denial of leave to add a 93A claim; his December 22, 2008, order dismissing the state Plaintiffs claims; and his 2007 decisions on dispositive motions. This action does not constitute a breach by the federal Plaintiffs. The federal Plaintiffs did not take that action, since they were not Parties to the state court action. Certainly, the Court has determined that with respect to the litigation in state court over whether their was a settlement agreement, the actions of the state court Plaintiffs bound the federal Plaintiffs. Docket # 74 at 13; Docket # 81. However, these two groups of plaintiffs are not in privity in all respects. They are not in privity with respect to the Notice of Appeal, because it seeks review of issues specific to the state case.

There is an additional reason that the Notice of Appeal does not excuse the Defendants' performance under the Settlement Agreement. As the appeal was ultimately argued and briefed, the state court Plaintiffs presented only three issues for review, not all the issues identified in their notice. First, they contended that Judge Gants erred in ordering dismissal of the individual claims before the Defendants had funded the settlement. Appealing on this theory is not a material breach of the Settlement Agreement. The Parties simply disagreed over a matter not addressed by their agreement – the time for performance – and the Plaintiffs presented that dispute to the Court. This is no more a breach than is the Defendants' appeal of Judge Gants' ruling that the Parties had reached an agreement. Second, the Plaintiffs appealed from the decision denying the request of intervenors to take over the putative class action. Because the proposed intervenors could and did appeal, it is immaterial that the settling state Plaintiffs joined in that aspect of the appeal. Had the settling state Plaintiffs not appealed that issue, the Defendants would still have had to contend with the appeal of that issue by the proposed intervenors. Third, the Plaintiffs sought to reverse Judge Gants' decision denying them leave to

6

add a 93A claim arising out of Defendants' alleged breach of the settlement agreement. By settling their cases and waiving appeals, the Plaintiffs did not relinquish their rights to address potential breaches of the Settlement Agreement. The Plaintiffs did not breach the settlement agreement merely by seeking to sue the Defendants for post-agreement conduct which they alleged was itself a breach of the agreement. Accordingly, the state court appeal does not constitute a material breach of the Settlement Agreement and it, therefore, cannot excuse the Defendants' performance under the agreement.

Third, the Defendants argue that the Plaintiffs materially breached the Settlement Agreement by pressing class certification in Shanley and Martel after the Appeals Court had determined conclusively that the Parties had entered into a binding settlement. This argument is without merit. The federal plaintiffs in Shanley and Martel had filed proposed class action complaints. 07-cv-12247, Docket # 1-2; 08-cv-10388, Docket # 1-2. Settlement of their claims required either a determination by the Court that either the proposed class failed to satisfy the requirements of Rule 23, or else the approval of the Court to ensure that the individual plaintiffs were not "selling out the class as a result of settling" only their individual claims. See 10-cv-11788, Docket #19-2 at 19-20. The Plaintiffs' pursuit of class certification did not materially breach the settlement agreement. One way or another, the Court had to have a hearing and reach a determination related to the class.

The Settlement Agreement was silent as to the question of which party bore the burden of seeking a fairness hearing with respect to the federal Plaintiffs. At the time the Plaintiffs filed their motion seeking class certification, the Court had not made a fairness determination and neither side was pressing the Court for such a ruling. Nor had the Defendants performed by

7

paying the $200,000 and tendering the requisite documents to the trustee. Thus, the time for the Plaintiffs' performance had not yet arrived.

Moreover, the Defendants obtained material benefits from the litigation over the class motion – they received a judicial determination that the proposed classes are not amenable to class certification –that are separate and distinct from the benefits to which they are entitled under the Settlement Agreement. No doubt the Defendants will cite this decision in other lawsuits. The Defendants no longer face the prospect of further litigation of the Shanley and Martel cases. Absent the denial of class certification, they faced the possibility of new plaintiffs intervening. Notably, in responding to the motion for class certification, the Defendants did not argue that the filing breached the settlement, nor that the Court should enforce the settlement. Accordingly, the Plaintiffs' motions for class certification do not constitute a material breach of the Settlement Agreement and, therefore, do not excuse the Defendants' performance.[3]

Fourth, Defendants suggest that Plaintiffs disavowed and repudiated the settlement, first at an October 29, 2010, Status Conference under questioning from the Court as to whether the Parties still wanted the settlement. The Court, however, specifically introduced the colloquy cited by the Defendants with the following statement:

> I'm about to ask a question . . . but the answer to that question is not conduct that's attributable to either the plaintiffs or the defendants, right. Therefore neither defendants can assert that the plaintiffs' answer is a basis for breach of the agreement

---

[3] Even if the Plaintiffs materially breached the settlement by filing their motion seeking class certification, my recommendation remains unchanged. Where the Defendants have obtained the benefit of the dismissal with prejudice of the state court Plaintiffs' claims prior to the material breach alleged, this case does not present the typical scenario in which performance is excused. The Defendants have not cited any precedent excusing performance in such a circumstance, and such an excusal would not be equitable. The Defendants are not without remedy, since, in the circumstance described in this note, they could seek damages in an action for breach of contract.

nor can the plaintiffs assert that the defendants' answer is evidence of breach of the agreement.

08-cv-10388, Docket # 85 at 11.

The Defendants may not point to these statements as evidence of repudiation any more than they may point to it as evidence of breach. The Defendants also point to statements made by the Plaintiffs' counsel in support of the class certification motion. The Court has already found that pressing the class certification issue did not breach the agreement, and statements made in support of that motion likewise are not a repudiation or disavowal of the agreement. In any event, the time for the Plaintiff's performance has not yet arrived, since the Defendants have yet to perform, and Massachusetts does not recognize the concept of anticipatory repudiation outside of the commercial context of the Uniform Commercial Code. See Cavanagh v. Cavanagh, 33 Mass.App.Ct. 240, 243-44 (1992).[4]

Fifth, the Defendants argue that the Plaintiffs chose to pursue a breach of contract remedy rather than to seek enforcement of the contract and that they now must live with that choice. The election of remedies doctrine, however, is designed to prevent a double recovery for the same wrong, not to prevent the pursuit of inconsistent alternative theories of recovery prior to entry of judgment. See Gens v. Resolution Trust Corp., 112 F.3d 569, 573 (1st Cir.1997) ("the primary purpose served by the 'election of remedies' doctrine is 'to prevent double [viz., sequential] recoveries for the same wrong'") (quoting Tavormina v. Fir, Inc. ( In re Alchar Hardware Co.), 764 F.2d 1530, 1534 (11th Cir.1985)). "An election . . . between legally inconsistent remedies can be made at any time prior to the entry of [final] judgment." Id. at n. 3 (quoting In re Leonardi's Intern., Inc., 123 B.R. 668, 669 (Bkrtcy.S.D.Fla.,1991)); Connectu LLC v.

---

[4] Although Massachusetts recognizes some exceptions to this rule, none apply here. Id.

Zuckerberg, 522 F.3d 82, 90 (1st Cir.2008) ("the purpose of the doctrine is to prevent double recovery for the same wrong").

CONCLUSION

The Parties reached a binding settlement agreement. The conditions precedent to implementation of that agreement – final judicial review of whether the parties formed an agreement and resolution of fairness of the settlement to the putative class – have now been satisfied. Both sides agree that the Court should require the Plaintiffs to complete their performance. No basis exists to excuse the Defendants' performance. Accordingly, I RECOMMEND that the Court:

1. DENY AS MOOT the motions for fairness hearings (Docket # 165 in 07-cv-12247; Docket # 104 in 08-cv-10388; Docket # 77 in 10-cv-11788);

2. Enter a sixty-day settlement Order of Dismissal in the Shanley and Martel cases;

3. Order the Shanley and Martel Plaintiffs and Defendants to exchange, within thirty days from the date of the Court's Order, Stipulations of Dismissal, with prejudice, along with standard release forms in exchange for the $200,000 payment and the other documents promised in the Settlement Agreement found by the Appeals Court;

4. DENY the Defendants' Motions to Dismiss in Shanley and Martel (Docket # 169 in 07-cv-12247; Docket # 107 in 08-cv-10388);

5. ALLOW the Defendants' Motion to Dismiss in Soroko (Docket # 86 in 10-cv-11788) for the reasons stated in the Defendants' Memorandum of Law (i.e., that the Defendants have prevailed on the breach of contr act claim in Count 1, and that each remaining claim is derivative of the breach claim)[5] and enter a judgment

---

[5] The Defendants' position is supported by the Complaint. Each of the remaining counts (for misrepresentation, fraud, violation of M.G.L. c. 93A) references the Defendants' alleged misconduct in failing to comply with the terms of the settlement. The Plaintiffs' opposition to this motion is confined to less than one page of argument within their opposition to the Shanley and Martel motions (see 10-cv-11788, Docket # 88 at 8). They argue that the remaining claims are distinct in that (1) they "are based on Defendants' making an unfair and deceptive offer of settlement of *individual* claims, then using Plaintiffs' acceptance of those *individual* claims to

of dismissal in favor of Defendants.[6]

                                                                              /s / Leo T. Sorokin
                                                    UNITED STATES MAGISTRATE JUDGE

---

kill the prosecution of the *class* claims that the Defendants had purposely excluded from the settlement" (emphasis in original), and (2) the fact that the Defendants denied there was an agreement and forced litigation over the issue of whether there was an agreement. As to the latter, the Appeals Court determined that the Defendants were within their rights to litigate the issue of the existence of the agreement, and that act cannot support liability. As to the former, the Court has since determined that there is no viable class.

    [6] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).